# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

SALAME M. AMR,

        Plaintiff,

V.                                    **CASE NO. 3:11-cv-423**

THE ATTORNEY GENERAL OF VIRGINIA, *et al.,*

        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Now come the Defendants, the Attorney General of Virginia,[1] Ronald N. Regnery

("Regnery"), and Gregory C. Fleming ("Fleming")[2] by counsel, and hereby file their

Memorandum in Support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

### I.    Procedural Background

**A.**    *Amr I*

In February 2007, Plaintiff filed a Complaint alleging violations of 42 U.S.C.

§§ 1981 and 1983, ("*Amr I*"). *Salame M. Amr v. VSU, et al.*, United States District

Court, Richmond, Civil Action No. 3:07cv628 ("*Amr I*"). Amr amended his complaint

twice to include claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

---

[1] While the caption of this Complaint specifically names "The Attorney General of Virginia," as a Defendant (hereafter "the Attorney General"), the Plaintiff also appears to identify the "Office of the Attorney General of Virginia ('Attorney General')" as the Defendant. Complaint, ¶ 14. The Defendants will presume that the Attorney General is the intended Defendant here, and shall respond on his behalf.

[2] Plaintiff alleges that "at all times relevant hereto, [Regnery and Fleming] was [an] Assistant Attorney General of Virginia." Complaint, ¶¶ 15, 16. Regnery "represented VSU as legal counsel in Plaintiff's first lawsuit" and Fleming "represented VSU as legal counsel in Plaintiff's lawsuits." Complaint, *Id.*

2000e-2, and the Civil Rights Act of 1964, as amended. A motion for summary judgment was filed on behalf of the defendants on August 20, 2008. Judge Lauck issued a report and recommendation on the motion for summary judgment, recommending that the motion be granted. On December 11, 2008, the matter was referred back to Judge Lauck for a supplemental report and recommendation. Judge Lauck's revised report and recommendation was issued on December 23, 2008. Amr, proceeding without counsel, objected to the revised report and recommendation. On January 14, 2009, the Court entered an order adopting the revised report and recommendation and overruling Amr's objections. Amr filed a Notice of Appeal on February 12, 2009.

On March 6, 2009, Amr filed a document styled "Motion to Update and Set the Record Straight" in this Court. In a memorandum opinion, Judge Payne denied the motion on May 4, 2009. Amr appealed this decision on June 3, 2009, to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit on August 6, 2009 affirmed the district court order granting summary judgment for the reasons stated therein in a *per curiam* opinion and denied Amr's request for a rehearing *en banc* on October 13, 2009. *Amr v. Va. State Univ.*, 331 Fed. Appx. 194, 195 (4th Cir. 2009). The Attorney General, Regnery, and Fleming represented the Defendants in *Amr I*.

**B.      *Amr II***

Amr filed a second lawsuit on October 20, 2009, and an Amended Complaint on November 18, 2009, alleging violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986. *Salame M. Amr v. Eddie N. Moore, et al.,* United States District Court, Richmond, Civil Action No. 3:09-cv-667 ("*Amr II*"). An Answer and Motion to Dismiss were filed on December 8, 2009 on behalf of the Defendants. A second motion to dismiss was filed on

behalf of two Defendants on January 6, 2010. The matter was to the Magistrate Judge for a report and recommendation on January 12, 2010. The Magistrate Judge issued a report and recommendation on June 21, 2010 recommending the Court grant the Defendants' Motion to Dismiss. On July 1, 2010, the Plaintiff filed a motion for Partial Summary Judgment for Reconsideration and for Urgent Relief. Plaintiff also filed objections to the report and recommendation on July 6, 2010. The Court entered an order on August 9, 2010 denying Plaintiff's Motion for Partial Summary Judgment for Reconsideration and for Urgent Relief and overruled the Plaintiff's objections to the report and recommendation. Plaintiff filed a Motion for Reconsideration of the Court's August 9, 2010 order on August 19, 2010. The Court denied this Motion for Reconsideration on August 19, 2010. The Plaintiff then filed his notice of appeal September 8, 2010 in the Court of Appeals for the Fourth Circuit. The Court of Appeals entered an unpublished *per curiam* opinion on February 16, 2011, affirming the August 9, 2010 district court order. *Amr v. Moore*, 2011 U.S. App. LEXIS 3246 (4th Cir. Feb. 16, 2011). The Attorney General, Regnery and Fleming, represented some of the Defendants in *Amr II*.

**C.     *Amr III***

On October 27, 2010, Amr filed yet a third lawsuit against the same defendants identified in *Amr I* and *Amr II* alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 2000, as well as claims for defamation, fraud, conspiracy, intentional infliction of emotional distress, negligence, tortuous interference, and unlawful actions under Virginia common law. *Amr v. Virginia State University, et al.,* United States District Court, Richmond, Civil Action No. 3:10cv787 ("*Amr III*"). In response, Regnery and Fleming filed a Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(b)(1), 11(b)(2), and

11(b)(3). The Plaintiff filed his Notice of Fraud Upon the Court and Plaintiff's Motion for Vacating Judgments. By order of the district court dated May 16, 2011, all pending motions have been referred to Magistrate Judge Lauck for a report and recommendation. As before, Regnery and Fleming represented some of the Defendants in *Amr III*.

**D.    *Amr IV***

On June 30, 2011, Amr filed the instant action alleging violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986. Complaint, ¶ 1. He also alleges claims for negligence, breach of contract, breach of fiduciary duty, fraud, conspiracy, tortuous interference with contract, "information Negleigently Supplied For the Guidance of Others" [sic], and intentional infliction of emotional distress.[3]

Rather than naming as Defendants those individuals who were involved with his personnel issues at Virginia State University, ("VSU"), and who were previously named in *Amr I*, *Amr II* and *Amr III*, Amr now turns his sights on the Attorney General, Regnery, and Fleming who defended those individuals, and Crowley who represented Amr in *Amr I*.

## II.    Argument

**A.    Standard Of Review - Motion Under Fed. R. Civ. P. 12(B)(6)**

For purposes of ruling on a Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(6), a plaintiff "must sufficiently allege facts to allow the Court to infer that all

---

[3] Plaintiff styles these claims as "First Cause of Action . . . . " "Second Cause of Action. . . ." etc. They are hereafter referred to as "Count One, Count Two" etc. The Attorney General, Regnery, and Fleming appear to be named Defendants in all but Count Three, which specifically refers to Scott Crowley and the Crowley and Crowley Law Firm ("Crowley") and alleges Breach of Contract and Breach of Fiduciary Duty. While Amr also suggests that he has been defamed, Complaint, ¶¶ 1, 8-11,75 and 107, and that he had an expectation of privacy under the Fourth Amendment, Complaint, ¶ 11, he has not brought either of those claims in any of his numbered causes of action.

elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344-45 (4th Cir. 2006). Further, this Court must accept, solely for the purpose of deciding the motion, the truth of all well-pled factual allegations and fair inferences arising therefrom. *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). This Court, however, is under no obligation to accept conclusory allegations regarding the legal effect of the facts alleged. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). This Court is also not required to conjure up allegations, which have not been pled, or accept as true allegations, which are inconsistent with the facts that are pled.

In addition, and pursuant to the reasoning in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), district courts must examine a complaint to determine whether the plaintiff has alleged sufficient facts to make a particular cause of action "plausible." Specifically:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.

*Id.* at 555 (citation omitted). Thus, a complaint must provide the defendants more than mere "notice" of those claims that a plaintiff may bring against them:

> Rule 8(a)(2) still requires a 'showing', rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.

*Id.* at 556 n.3 (citing 5 ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1202, at 94, 95 ("Rule 8(a) 'contemplates the statement of circumstances, occurrences and events in support of the claim presented'

and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it'")). Moreover, the "plausibility" standard is not a "probability requirement," but it requires more than a mere possibility that the defendant has acted unlawfully. *Id.* at 556. In *Ashcroft v. Iqbal*, 556 U.S.___, 129 S. Ct. 1937, 1953, 2009 U.S. LEXIS 3472, ***39 (2009), the Supreme Court stated that this plausibility standard applies to "all civil actions and proceedings in the United States district courts."

Finally, this Court is permitted to take judicial notice of pleadings filed among its own records, *Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986), and is not required to accept as true allegations which are inconsistent with judicially noticed facts. 5A Wright & Miller, Federal Practice and Procedure § 1357, pp. 311-20 (1990).

**B.      General Defenses to Amr's Complaint**

### 1. Amr's Complaint Fails To State A Cause Of Action Against The Attorney General, Regnery Or Fleming Under *Twombly* And *Iqbal*.

Amr's Complaint simply fails to set forth facially plausible claims against the Attorney General, Regnery, or Fleming, and must be dismissed. Expanding upon its decision in *Twombly,* 550 U.S. at 570, the 5 to 4 majority in *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. Two principles were held to underlie this requirement of facial plausibility. First, not only are legal conclusions not to be accepted as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, quoting *Twombly,* 550 U.S. at 555. This is of particular importance in this case where much of the allegations in each of the counts are simply

"threadbare recitals of the elements of a cause of action supported by mere conclusory statements" with no causal link or nexus (except statements that there are causal links).

The second principle is that the task is "context-specific," meaning that the Court is allowed to impose on the analysis its "judicial experience and common sense." *Iqbal,* 129 S. Ct. at 1950. In sum, the Court in *Iqbal* concluded that not all allegations, legal conclusions and factually implausible ones are entitled to an assumption of truth. *Id.* It has long been the law in this circuit that while a court takes all factual allegations made in a complaint as true, and draws all reasonable and favorable inferences from those facts – a court need not, however, "accept as true *unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.* 213 F.3d 175, 180 (4th Cir. 2000) (emphasis added); *accord Shonk v. Fountain Power Boats,* 338 Fed. Appx. 282, 2009 U.S. App. LEXIS 15642 (4th Cir. 2009); *Smith v. Virginia,* 2009 U.S. Dist. LEXIS 60828 (E.D. Va. July 15, 2009), *aff'd, Smith v. Virginia,* 353 Fed. Appx. 790 (4th Cir. 2009).

In the instant Complaint, Amr fails to allege facts to support all the elements of his claims, makes bold conclusory allegations as to what "the defendants" did or did not do, and fails to identify with sufficient particularity, which Defendant may be responsible for what conduct. For example, an examination of the 22-page, 183-paragraph Complaint, reveals that Amr specifically alleges that the Attorney General, Regnery, and/or Fleming committed some perceived impropriety in only four locations within that document. He alleges that the "Defendant Attorney General of Virginia had significantly failed to protect the Plaintiff's integrity and professional reputation from collateral damages that resulted from unlawful actions from superiors at VSU . . . ."

Complaint, ¶ 24. He further alleges, "[o]n March 28, 2008, Defendant Crowley had engaged immediately in conspiracy with Defendant Regnery for perfecting VSU's decision to terminate his employment." Complaint, ¶ 40. In addition, he contends "[i]n conspiracy, Defendant Fleming objected to that motion [Plaintiff's motion to voluntarily dismiss his complaint] and declared then that VSU was so much ready for the scheduled trial on September 29, 2008." Complaint, ¶ 53. He also recites "Defendant Fleming filed 'Motion to Compel Discovery' that aimed to create inconsideration for Plaintiff when case got dismissed." Complaint, ¶ 55. Beyond these allegations – none of which establish any wrongdoing on the part of these Defendants - the Complaint is bereft of any specifics as to how the Attorney General, Regnery, or Fleming violated Amr's rights.[4]

Based on the holding in *Iqbal* and *Twombly*, it is clear in this case that the Complaint alleges insufficient facts to support the allegation that the Attorney General, Regnery, or Fleming did anything other than defend their clients effectively. Amr's claims must fail.[5]

---

[4] In addition, Amr's claims appear to be based on what he believes was a concerted conspiracy between all the named Defendants. As in *Twombly*, which alleged a conspiracy under § 1 of the Sherman Act, while Amr's conclusory allegations might be consistent with an illicit agreement if they were supported by facts - which they are not - the context here also suggests independent action by the Defendants without an illicit goal. For example, it should not surprise anyone that the Attorney General, Regnery, and Fleming as counsel for the Defendants in *Amr I, Amr II,* and *Amr III,* would take positions that were designed to defeat Amr's claims. That they did so, however, does not establish a conspiracy, let alone actionable harm. Rule 8(a)(2) F.R.C.P., requires more than what has been alleged here. It requires at the pleading stage, that the allegations plausibly suggest an agreement and "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 557.
[5] While the Attorney General certainly appeared as counsel on the pleadings in *Amr I, Amr II,* and *Amr III,* Amr has not specifically alleged that he personally played any role in any of his cases. Based on that alone, the Complaint against him should be dismissed.

## 2. The Eleventh Amendment Bars Suits In Federal Court Against Public Officials For Money Damages.

Counts One, Two, Four, Five, Six, Seven, Eight, and Nine, allege a number of claims under the United States Constitution and Virginia common law. Amr has sued the Attorney General, Regnery and Fleming in their official and individual capacity. Complaint, ¶¶ 15, 16. Amr also seeks money damages. Complaint page 22.[6]

The Eleventh Amendment to the United States Constitution extends immunity to state agencies and other government entities properly characterized as "arm[s] of the State" which are sued in federal court. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Gray v. Laws*, 51 F.3d 426, 430. "[It] is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. at 663. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* at 663; *see also Gray v. Laws,* 51 F.3d at 430; *Lynn v. West,* 134 F.3d 582, 587 (4th Cir. 1998), citing with approval *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945). Moreover, such an action is also barred when it seeks recovery for past due sums, such as lost wages. *See Edelman v. Jordan*, 415 U.S. at 668-69; *Univ. of Pittsburgh Med. Ctr. v. Walker*, 2007 U.S. Dist. LEXIS 39309, *7-8 (S.D. W. Va. May 30, (2007)(Action seeking refund of monies due

---

[6] Unfortunately, Amr fails to identify from count to count whether the Attorney General, Regnery, and Fleming are being sued in their official or individual capacity. These Defendants will therefore assume that they are being sued in both their official and individual capacities.

for past transplantation services violated Eleventh Amendment).[7]

Moreover, to the extent that Amr's suit is against any individual Defendant named in his/her official capacity, he cannot recover retrospective relief in the nature of damages from that Defendant either. *Montgomery*, 266 F.3d at 339-40. Such a suit would again "seek[] monetary damages that would be paid from the state treasury . . . ." *Frazier v. Courter*, 958 F. Supp. 252, 253 (W.D. Va. 1997); *Lynn*, 134 F.3d at 588.

Consequently, the actions against the Attorney General, Regnery, and Fleming in Counts One, Two, Four, Five, Six, Seven, Eight, and Nine, which are brought against them in their official capacity for money damages, cannot lie.

### 3. The Attorney General, Regnery and Fleming Cannot Be Sued In Their Official Capacity As They Are Not "Persons" Under 42 U.S.C. § 1983.

Amr has also filed suit against the Attorney General, Regnery, and Fleming in Count One pursuant to 42 U.S.C. § 1983, seeking money damages in their "official capacity." To the extent that these Defendants are sued in their "official" capacity, this § 1983 claim must also fail.

Section 1983, in relevant part, provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[7] Assuming that the "Office of the Attorney General" was the intended Defendant here rather than the Attorney General himself, that entity would be entitled to Eleventh Amendment immunity, which would act as a total bar to all of Amr's claims for money damages.

The Supreme Court has made clear that § 1983 provides a cause of action for "violations of federal statutory as well as constitutional law." *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). The Court, however, has also said, "[w]e find nothing substantial in the legislative history that leads us to believe that Congress intended that the word 'person' in § 1983 included the States of the Union. And surely nothing in the debates rises to the clearly expressed legislative intent necessary to permit that construction." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69 (1989). Moreover, neither state agencies, nor state officials in their official capacities, are deemed "persons" for purposes of suit under § 1983. *Id.; see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)(section 1983 does not authorize an action against state university or individuals in their official capacities).

For the forgoing reason, Count One should be dismissed.

### 4. The Eleventh Amendment Bars Suits In Federal Court Against Public Officials For Injunctive Relief Where They Have No Authority To Implement The Relief Requested.

In addition to money damages, Amr also seeks "[d]eclaratory and injunctive relief." Complaint, p. 22.[8]

As indicated earlier, a suit for money damages against a state official in his official capacity is barred by the Eleventh Amendment The *Ex parte Young* exception to this rule, however, "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184

---

[8] Amr does not articulate what prospective injunctive relief he seeks. The Attorney General, Regnery, and Fleming will assume that he wishes to be reinstated to his former employment in a position at or above his former level at VSU.

11

(4th Cir. 2002). An action under *Ex parte Young* can only seek prospective injunctive relief. *Id.* at 186. Furthermore, "[t]o obtain such prospective relief against the State or one of its agencies under § 1983, plaintiff must sue the appropriate state official in his or her official capacity." *Wolfenden v. Long*, 2010 U.S. Dist. LEXIS 75073, *18 (E.D.N.C. July 26, 2010); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)(Emphasis added). *Ex Parte Young*, however, does not apply where the Defendant does not have the authority to comply with an order granting injunctive relief. *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 789 (E.D. Va. 2003); *see also*, *Brown v. Lieutenant Governor's Office on Aging*, 697 F. Supp. 2d 632, 634 (D.S.C. 2010)(claims for injunctive relief (seeking reinstatement) pursued against Defendant in her official capacity deemed moot because Defendant no longer employed by the employer); *Dyson v. Lavery*, 417 F. Supp. 103, 109 (E.D. Va. 1976)(Claims for reinstatement could not apply to former President of the University because he no longer could effectuate a reinstatement of the named plaintiff, or afford other affirmative equitable relief for the class).

Here, Amr has not alleged, nor could he, that the Attorney General, Regnery, or Fleming, as counsel for the VSU Defendants in *Amr I, Amr II,* and *Amr III,* has the ultimate authority to reinstate Plaintiff to his former employment. The scope of Arm's potential prospective relief, therefore, exceeds the authority of these Defendants. For this reason, the Eleventh Amendment also bars any claim for prospective relief against any of them.

### 5. The Statute Of Limitations Bars Plaintiff's Claims.

#### a. The federal claims

The claims against the Attorney General, Regnery, and Fleming are barred by the statute of limitations. Count One alleges claims under §§ 1981 and 1983, while Count Three alleges claims under §§ 1985 and 1986. While § 1986 provides for a one year statute of limitations,[9] the claims authorized by §§ 1981, 1983, and 1985 do not provide for a specific statute of limitations. In determining what statute of limitations should apply to cases brought under these provisions, "[f]ederal courts should select the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). In both *Wilson v. Garcia*, 471 U.S. 261 (1985), and *Goodman*, the Supreme Court held that the respective state statutes of limitation applicable to personal injury actions should apply to all claims brought under § 1981 and § 1983. In Virginia, that limitations period is two years. *See* § 8.01-243(A), *Code of Virginia*; *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991). The same statute of limitations has been held to apply to a conspiracy claim brought pursuant to § 1985. *See McCausland v. Mason County Bd. of Education*, 649 F.2d 278, 279; *Amr v. Moore*, 2010 U.S. Dist. LEXIS 79953, 29-30 (E.D. Va. June 21, 2010).

Furthermore, an action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995), citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979).

---

[9] That section provides "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action accrued." 42 U.S.C. § 1986.

1. **Count One:** Amr alleges a claim for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment and brings this claim pursuant to §§ 1981 and 1983. Complaint, ¶ 112. He contends "Defendants, acting jointly and severally interfered with Plaintiff's reasonable expectation of continued employment contract expectancy at VSU **beyond May 2008.**" Complaint, ¶ 111 (Emphasis added). He alleges further "Defendants, acting individually, and in full knowledge and reckless disregard for the present state of the law concerning disparate treatment of the plaintiff ... was the proximate cause of getting the Plaintiff's employment terminated." Complaint, ¶ 112.

According to the Complaint, Amr's contract of employment at VSU was not extended beyond its normal termination date of May 2008. Complaint, ¶¶ 43, 165. The operative event, which triggered Amr's obligation to file suit occurred, therefore, when his contract was not renewed in May 2008. As of May 2008, Amr would have known all the facts that form the basis for his § 1981 and § 1983 "equal protection" claims. Therefore, Amr would have been obliged to file suit to vindicate his rights no later than May 2010. Since Amr filed this case on June 30, 2011, the claims in Count One are time-barred and should be dismissed.

2. **Count Seven:** In Count Seven, Amr alleges a claim for violation of his rights under the "enforcement clause of the Fourteenth Amendment." Complaint, ¶ 166. He also makes a claim for denial of "the equal protection of the law." Complaint, ¶ 168. He brings these claims pursuant to §§ 1985 and 1986. He alleges:

> Defendants ... jointly and severally conspired to interfere with Plaintiffs reasonable expectation of continued employment with Virginia State University by giving false and malicious information concerning him,

which interference did cause his dismissal from the University in May
2008.

Complaint, ¶ 165.

He also alleges "Defendants conspired to obstruct justice and to negatively influence the
outcome of the Plaintiffs **first lawsuit** . . . Defendants engaged in fraud on the Court."
Complaint, ¶ 167 (Emphasis added). Finally, he alleges "Defendants had knowledge of
the wrongs conspired to be done, were about to be committed, and had the power to aid
in preventing the commission of the same, neglected to do so." Complaint, ¶ 169.

From the above, it appears that there are two operative events, which would
trigger the obligation to file a lawsuit to vindicate Amr's rights: first, his termination
from VSU in May 2008, and second, the last date in *Amr I,* when the Attorney General,
Regnery, and Fleming performed any act in defending against Amr's first lawsuit in the
District Court. Clearly, for the reasons stated earlier, the claims based on the termination
of Amr's employment are time-barred. So too are the claims arising from the Attorney
General, Regnery, and Fleming's conduct in *Amr I.* As noted in the procedural history
section of this memorandum, this Court entered an order granting summary judgment to
the defendants in *Amr I* on January 14, 2009. Complaint, ¶ 117. Amr filed a Notice of
Appeal of that decision on February 12, 2009, and the record was forwarded to the Fourth
Circuit. On March 6, 2009, Amr filed his "Motion to Update and Set the Record
Straight" in this Court. Judge Payne denied the motion on May 4, 2009. Amr appealed
this decision to the Fourth Circuit on June 3, 2009.

To the extent that these Defendants may have attempted to influence the district
court in *Amr I,* that would have occurred no later than May 4, 2009, the date Judge Payne
denied Amr's final motion. Amr therefore, had until May 4, 2011 in which to file suit to

vindicate his rights arising out of the Defendants' conduct before this Court. Whatever basis he believed existed to warrant such a suit was certainly known to him at that time. He failed to do so. These claims are time barred.[10]

### b. The state claims

Section 8.01-243(A), *Code of Virginia* provides for a two-year statute of limitations for personal injury, whatever the theory of recovery. Section 8.01-248, *Code of Virginia* also provides a two-year statute of limitations for any personal action "for which no limitation is otherwise prescribed . . . ."

**1. Count Two:** In Count Two, Amr claims that the Attorney General, Regnery, and Fleming were negligent and that "as a direct and proximate result of defendants' intentional negligence, the case got dismissed with prejudice on January 14, 2009." Complaint, p. 16, and ¶ 117. Since the injury Amr claims occurred on January 14, 2009, Amr had to file suit no later than January 14, 2011. He did not. Amr's claim in this Count is therefore time-barred.[11]

---

[10] Significantly, Amr's § 1985 conspiracy claim in this count, appears to be based on an agreement between the Attorney General, Regnery (and perhaps Fleming, although that is not very clear) and Crowley. Crowley, however, was only involved in the *Amr I* litigation from March 2, 2008 until December 15, 2008. Complaint ¶¶ 39, 103. Amr also suggests that he knew about the conspiracy in September 2008. Complaint, ¶ 97. In addition, and as noted in *Buschi v. Kirven,* 775 F.2d 1240, 1251 (4th Cir. 1985), a conspiracy requires the involvement of two or more persons, not agents of the same corporation or institution. Once Crowley was no longer counsel for Amr, no conspiracy could be formed among just the Attorney General, Regnery, and Fleming. Based on the forgoing, rather than the more liberal date of May 4, 2011, marking two years from the conclusion of *Amr I*, Amr would really have had until December 15, 2010, (two years from Crowley's withdrawal) or September 2010, (two years from when Amr discovered the conspiracy) to file suit based on a § 1985 claim. Regardless of which date is selected as the trigger date for statute of limitations purposes, Amr's conspiracy claim is nevertheless time-barred.

[11] Again, even if one adopts May 4, 2009, the date of Judge Payne's last order in *Amr I,* as the trigger date for statute of limitations purposes, this action is still time-barred.

**2. Count Four:** Count Four alleges "Fraud." Complaint, p. 16. He alleges, "Defendants willfully engaged in fraud in order to deny Plaintiff of his right to proceed and receive a fair and impartial trial at this Court." Complaint, ¶ 134. Defendants made false representations and falsified material facts at this Court." Complaint, ¶ 136. Once again, the proceedings in *Amr I* were concluded in the district court, no later than May 4, 2009. Amr, therefore, had to file suit no later than May 4, 2011. He failed to do so. This claim is also time-barred.

**3. Count Five:** In Count Five, Amr brings a claim under common law conspiracy. Complaint, p. 17. He alleges that "Defendants willfully engaged in conspiracy with others in order to deny Plaintiff of his right to proceed and receive a fair and impartial trial at this Court." Complaint, ¶ 148. "Defendants' misrepresentation was made for the purpose of defrauding this Court . . . ." Complaint, ¶ 151. Again, *Amr I* ended in the district court no later than May 4, 2009, Amr knew of the conspiracy in September 2008, and Crowley withdrew as counsel in December 2008. Virginia law requires that "there must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself." *Bowman v. State Bank of Keysville*, 229 Va. 534, 541 (1985). Therefore, once Crowley withdrew, the Attorney General, Regnery, and Fleming could not as a matter of law, conspire among themselves in their capacity as counsel for the VSU Defendants.

For these reasons, suit on any common law conspiracy had to be filed absolutely no later than May 4, 2009, at the conclusion of *Amr I*. This claim is also time-barred.

**4. Count Eight:** Count Eight alleges "§ 552. Information Negleigently Supplied for the Guidance of Others" [sic], Complaint, p. 120. Amr contends, "Defendants

supplied false information for the guidance of others and this Court in their transactions,

pleadings and motions . . . ." Complaint, ¶ 172. If this claim is construed as a fraud, it is

governed by § 8.01-243(A), *Code of Virginia*. If it is construed as another method of

causing personal injury to Amr, it would be governed by the catchall statute of limitations

found at § 8.04-248, *Code of Virginia*. In either event, the statute of limitations is two

years.

Once again, the action is time-barred.

**5. Count Nine:** Count Nine alleges a claim for "Intentional Infliction of

Emotional Distress (Outrage) § 46 Restatement of Torts (Second)" Complaint, p. 20.

Without repeating the specific allegations contained in paragraphs 177 - 180 of the

Complaint, it is once again clear that the injury complained of in this count arose during

the litigation in *Amr I.* That case, however, ended, as indicated earlier, no later than May

4, 2009. Once again, this claim is time-barred.

**C.     Specific Defenses to Amr's Complaint**

**1. Count One - 42 U.S.C. § 1981 Violation/42 U.S.C. § 1983 Violation**

**a. 42 U.S.C. § 1981 Violation**

In Count One, Amr alleges that he has brought this suit, in part, pursuant to

§ 1981. Section 1981 provides, in pertinent part, as follows:

> All persons within the jurisdiction of the United States shall have the
> same right in every State and Territory to make and enforce contracts,
> to sue, be parties, give evidence, and to the full and equal benefit of
> all laws and proceedings for the security of persons and property as is
> enjoyed by white citizens.

Amr's claim under § 1981 requires him to allege facts in support of the following

elements:  (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate

on the basis of race; and (3) the discrimination concerns one or more of the activities

enumerated in the statute. *Bobbitt by Bobbitt v. Rage, Inc.*, 19 F. Supp. 2d 512, 517

(W.D.N.C. 1998) (citations omitted).  To support an action for racial discrimination

under § 1981 there must be a showing of racial animus by the defendants. *See General*

*Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982); *Bank Realty, Inc. v.*

*Practical Management Technology, Inc.*, 1990 U.S. Dist. LEXIS 7480, 14 (D. Md. June

15, 1990).

Interestingly, Amr alleges he is a Caucasian.  Complaint, ¶ 13.  He also, however,

contends he is a member of a protected class by virtue of his race and national origin.

Complaint, ¶ 13.[12]  Nevertheless, and more significantly, he does not allege that the

Attorney General, Regnery, or Fleming treated him differently from someone of another

race.  Nor does he allege they acted one way or another in their defense of *Amr I, Amr II,*

or *Amr III*, based upon his race.  Conclusory allegations of discrimination not supported

by any reference to particular acts, practices or policies, fail to state a claim for relief

under § 1981. *United Black Firefighters v. Hirst*, 604 F.2d 844 at 847; *see also Collin v.*

*Rector  & Bd. of Visitors of the Univ of Va.*  873 F. Supp. 1008, 1014 (W.D. Va. 1995).

Any claim under § 1981, should therefore be dismissed.

**b. 42 U.S.C. § 1983 Violation**

In relevant part, § 1983 provides:

---

[12] While § 1981 is an appropriate vehicle to address discrimination based on race, it has also been interpreted to include "protection from discrimination [for] identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.  Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *accord Perkins v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 2010 U.S. Dist. LEXIS 20055 (D. Md. Mar. 5, 2010).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

"A federal civil rights claim based upon § 1983 has two essential elements: '[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), citing *West v. Atkins*, 487 U.S. 42, 48 (1988).

In the instant case, Amr contends that his employment contract was not renewed and that the Defendants acted improperly in *Amr I*, so as to deprive him of his constitutional/federal rights. He does not allege, however, any fact, which suggests that the Attorney General, Regnery, or Fleming acted in any manner, or with any motive that would have been constitutionally impermissible, or barred by federal statute. Moreover, in light of the Fourth Circuit's decisions in *Amr I and Amr II*, nor can he establish that his termination was other than proper. This claim must also fail.

### 2. Count Two - Negligence

Count Two alleges a claim of negligence under Virginia common law. In that regard, the doctrine of sovereign immunity serves to protect certain individuals employed by the Commonwealth. As was said in *James v. Jane*, 221 Va. 43, 52 (1980), "[t]he Commonwealth of Virginia functions only through its elected and appointed officials and its employees. If because of the threat of litigation, or for any other reason, they cannot act, or refuse to act, the state also ceases to act." In *Messina v. Burden*, 228 Va. 301, 309

(1984), the Supreme Court of Virginia, citing with approval from W. Prosser, *Handbook of the Law of Torts* § 132 at 987- 88 (4th ed. 1971), said:

> There is very little debate regarding the extension of the doctrine to those who operate at the highest levels of the three branches of government. Governors, judges, members of state and local legislative bodies, and other high level governmental officials have generally been accorded absolute immunity.

These officials "are required by the Constitution and by general law to exercise broad discretionary powers, often involving both the determination and implementation of state policy." *James v. Jane*, 221 Va. at 53. Nevertheless, "[t]his immunity is also available to an employee of the state or of one of its agencies who performs supervisory functions or exercises discretionary judgment within the scope of his employment." *Lawhorne v. Harlan*, 214 Va. 405, 407 (1973)(Hospital administrator as well as a surgical intern engaged in a postdoctoral course of training at a state hospital, immune from liability for simple negligence). *See also Hinchey v. Ogden, supra.*

As far as supervisory functions are concerned, Regnery and Fleming report up the chain of command to the Attorney General, who is "the chief executive officer of the Department of Law . . . ." *Id.* He is responsible for the operations of that office. The Attorney General in *Amr I, Amr II,* and *Amr III,* would have acted in a supervisory capacity in those cases, with either Regnery or Fleming taking the lead in the cases. Complaint, ¶¶ 16. On this basis alone, the Attorney General is entitled to the protection of sovereign immunity in his capacity as a supervisor. *Lawhorne*, 214 Va. at 407. So too, Regnery is also entitled to sovereign immunity in his capacity as Fleming's supervisor in *Amr II* and *Amr III.*

In addition, however, in *James v. Jane*, 221 Va. at 51, the Virginia Supreme Court developed a four-part test to determine whether an individual state employee would be entitled to immunity. The four factors to be considered are: the nature of the function performed by the employee; the extent of the state's interest and involvement in the function; the degree of control and direction exercised by the state over the employees; and whether the act complained of involved the use of judgment and discretion.

Applying the four factors in the instant case demonstrates that the Attorney General, Regnery, and Fleming are entitled to sovereign immunity.

Here, Regnery and Fleming were employed by the Attorney General and all three Defendants represented VSU as legal counsel in the suit(s) brought by Amr. Complaint, ¶¶ 15-16. "The Attorney General provides legal advice and representation to VSU that includes help with personnel issues, contracts, and defending against lawsuits." Complaint, ¶ 14; § 2.2-500 *et seq.*, *Code of Virginia.*

It is indisputable that the Commonwealth has a substantial interest in how these Defendants perform their jobs because the state has a substantial interest in operating an effective Department of Law, and in providing appropriate and ethical representation to state agencies and state employees who are sued.

It is also beyond question that the Commonwealth exercises a degree of control and direction over each of these employees as evidenced by § 2.2-500 *et seq., Code of Virginia,* which sets out the duties of the Attorney General and his staff and describes the responsibilities of his office.

Finally, it is beyond question that to the extent they may have been involved in *Amr I, Amr II* and *Amr III,* the Attorney General, Regnery, and Fleming would have

made decisions during their representation requiring judgment and discretion. In fact, the acts Amr complains of, that the Attorney General "failed to protect the Defendant's integrity. . . ." Complaint, ¶ 24; that Regnery worked to "perfect [] VSU's decision to terminate [Amr's] employment." Complaint, ¶ 40; that Fleming objected to Amr's motion to voluntarily dismiss, Complaint ¶ 53; or filed a motion to compel discovery, Complaint, ¶ 55; stem directly from a host of discretionary decisions that would have been made by these Defendants. In short, what the Attorney General, Regnery, and Fleming did during the pendency of Amr's cases, from start to finish, was exercise discretion.

Consequently, the Attorney General, Regnery, and Fleming clearly fall within the protection of the doctrine of sovereign immunity, and Count Two, premised on negligence should be dismissed.

### 3. Count Four - Fraud

Under Virginia law, fraud may be either constructive or actual. "The elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 220 (2005). The elements necessary to state a claim of actual fraud [on the other hand] are: (1) a false representation (2) of a material fact (3) made intentionally or knowingly (4) with the intent to mislead (5) reliance by the misled party and (6) injury. *Shirland Arms Corp. v. Hall Constr., Inc.*, 67 Va. Cir. 299, 301 (2005), citing *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984). Furthermore, in order to prevail, a Plaintiff must plead with the

"requisite degree of particularity, facts which support all the elements of a cause of action

for constructive fraud." *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295 (1996)

In the instant case, Plaintiff fails to articulate with any specificity, what material

facts the Defendants represented to the Court, let alone how Amr [not the district court]

relied on those facts to his detriment. Rather, what Amr has done, in conclusory

language, is simply allege that the Defendants misrepresented facts to the Court, and

presumably the Court relying on those representations, ruled in their favor. These

allegations, however, are insufficient to state a claim for fraud as to Amr, are unsupported

by any facts, and are unsupported by the record in *Amr I* and *Amr II* below.

This count should also be dismissed.

### 4. Count Six – Tortious Interference With Contract

In order to allege a claim for intentional interference, one must allege: (a) the

existence of a valid contractual relationship or business expectancy; (b) knowledge of the

relationship or expectancy on the part of the defendant; (c) intentional interference

inducing or causing a breach or termination of the relationship or expectancy; and (d)

resulting damages. *Butler v. Rector & Bd. of Visitors of the College of William & Mary*,

121 Fed. Appx. 515, 521 (4th Cir. 2005); *Perk v. Vector Resources Group*, 253 Va. 310,

314, 485 S.E.2d 140 (1997). In addition, "because an untenured professor such as Amr

has no constitutionally protected property interest in continued employment, to allege

tortious interference with a contract terminable at will . . . Amr must also establish 'that

the defendant employed 'improper methods' of interference. . . Improper interference

includes 'those means that are illegal or independently tortious . . . .'" *Amr* v. *Moore,*

2010 U.S. Dist. LEXIS 79953, *24. (Internal and external citations omitted).[13]

To prove the existence of a business expectancy, a party must demonstrate an objective expectation of future business, "mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action." *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 301, 484 S.E.2d 892 (1997). The plaintiff must [also] establish "a probability of future economic benefit, not a mere possibility." *Id.*; *see RFE Indus. v. SPM Corp.*, 105 F.3d 923, 927 (4th Cir. 1997) (no valid business expectancy under Virginia law where a supplier's customers purchased goods on an 'as needed' basis with no commitment to future purchases). Amr's allegations fall far short of the mark.

While Amr may have been hoping to obtain a renewal of his contract and to continue his employment at VSU, he has alleged no facts, which demonstrate that this would occur. Consequently, Amr cannot demonstrate "a probability of future economic benefit," and not a mere possibility. *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. at 300, 484 S.E.2d at 896. Even if such an expectancy existed, however, under Virginia law, a person who is a party to a contract (or an agent or employee for a party) cannot tortiously interfere with that contract. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985). In *Chaves*, the court observed that tortious interference occurs when someone "intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract . . . ." 230 Va. at 120, 335 S.E.2d at 102 (citation omitted). Under

---

[13] An employment contract in Virginia is "presumed to be one terminable at will, upon reasonable notice, unless the period of its intended duration can be fairly inferred from its provisions." *Graham v. Central Fidelity Bank*, 245 Va. 395 (1993).

this definition, a party to a contract or its one of its agents cannot tortiously interfere with

that contract. *Accord Stronach v. Va. State Univ.*, 631 F. Supp. 2d 743, 753 (E.D. Va.

2008)(agents of VSU, not able as a matter of law to interfere with VSU's contract).

Consequently, even if a business expectancy existed as between Amr and VSU, the acts

complained of by the Attorney General, Regnery, and Fleming while acting in their

capacities as attorneys for VSU, cannot be construed as rising to the level of tortuous

interference.[14]

    For these reasons, Amr's tortious interference claim should be dismissed.

### 5. Count Seven - Conspiracy (42 U.S.C. § 1985(3)) Claim/ 42 U.S.C. § 1986 Claim.[15]

### a. Conspiracy (42 U.S.C. § 1985(3)) Claim.

Count Seven alleges a claim of a conspiracy in violation of § 1985(3). Complaint,

p. 19. To state a claim under § 1985, a plaintiff must allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a
> specific class-based, invidiously discriminatory animus to (3) deprive the
> plaintiff of the equal enjoyment of rights secured by the law to all, (4) and
> which results in injury to the plaintiff as (5) a consequence of an overt act
> committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995); *Bray v. Alexandria Women's Health*

*Clinic*, 506 U.S. 263, 268 (1993). The conspiracy element of § 1985 requires "a

combination of two or more persons acting in concert to commit an unlawful act, the

principal element of which is an agreement between the parties to inflict a wrong against

---

[14] This of course assumes that the Attorney General, Regnery, and Fleming were
involved in the decision to deny continued employment to Amr - which Amr has not
alleged - as opposed to defending that decision after the fact in court.
[15] While Amr does not identify, which sub-section of § 1985 he is proceeding under, it is
presumed that he intends to bring his conspiracy claim pursuant to § 1985(3).

or injury upon another.'" *Simmons v. Poe* at 1377, citing *Lenard v. Argento*, 699 F.2d 874, 882-83 (7th Cir. 1983).

The Fourth Circuit, however, has limited the "person or class of persons" protected by this statute to the "specific groups and concerns which were involved in the post-Civil War struggle for civil rights." *Harrison v. KVAT Food Management*, 766 F.2d 155, 161 (4th Cir. 1985). The civil rights statute, "known as the Ku Klux Klan Act . . . was in response to widespread violence and acts of terror directed at blacks and their supporters in the postwar South." *Id.* at 156-57 (omitting internal citation). This Circuit does not extend the protections to other groups. "Since the Court in *Griffin* provided blacks a remedy under § 1985(3) against private conspiracies, no other group or class has achieved similar status." *Id.* at 161. This is settled law. *See also Cloaninger v. McDevitt*, 2006 U.S. Dist. LEXIS 65913, *20 (W.D.N.C. Sept. 3, 2006). As a result, Amr, a Caucasian, cannot utilize this Reconstruction Era statute. This cause of action must be dismissed.

Even if § 1985(3) did provide Amr a remedy, he has simply failed to allege sufficient facts to substantiate a conspiracy. "A claim pursuant to § 1985 must be supported 'with specific facts that the defendants were motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiffs of the equal enjoyment of rights secured by the law to all." *Traversa v. Ford*, 2010 U.S. Dist. LEXIS 60157, *9-10 (D. Md. 2010) (Citations omitted). "Without such a meeting of the minds, **the independent acts** of two or more wrongdoers do not amount to a conspiracy." *Williams v. Lappin*, 2004 U.S. Dist. LEXIS 30417, * 7 (W.D. Va. Oct. 26, 2004)(Emphasis added); *see also Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995), *aff'd*, 87 F.3d 1308

(4th Cir. 1996) (granting motion to dismiss § 1985 conspiracy claim where the plaintiff "failed to show any 'meeting of the minds' by Defendants to violate the Plaintiff's constitutional rights").

The mere fact that Amr was not rehired, and that the Attorney General, Regnery, and Fleming may have had some hand in the chain of events following that decision, or may have even assisted in implementing the decision or defending it in court, does not raise an inference of a conspiracy to deprive Amr of his constitutional rights. This conspiracy claim against the Attorney General, Regnery, and Fleming should be dismissed.

### b. 42 U.S.C. § 1986 Claim.

"[A] colorable claim under § 1985 is a prerequisite to a claim under § 1986." *Amr v. Moore,* 2010 U.S. Dist. LEXIS 79953 at *30 (citations omitted). Since Amr has failed to allege sufficient facts to establish even a bare bones § 1985(3) claim, and any claim, even if properly plead would nevertheless be barred by the statute of limitations, *see supra,* this § 1986 claim must also fail.

### 6. Count Eight - Information Negligently Supplied for the Guidance of Others Claim

This claim appears to be the same as the "fraud" claim set out in Count Four of the Complaint. To that extent, it suffers from the same infirmities and should be dismissed.

### 7. Count Nine - Intentional Infliction of Emotional Distress (Outrage) Claim

As noted in *SuperValu, Inc. v. Johnson,* 276 Va. 356, 369-70 (2008), under Virginia law:

> [i]n order to recover on a claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements of proof. The plaintiff must show that 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe.

In order to be deemed outrageous or intolerable, the conduct alleged must be viewed by reasonable persons as "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Almy v. Grisham*, 273 Va. 68, 78 (2007) (citations omitted).

In Count Nine, the specific conduct which Amr alleges caused him emotional injury includes: "obstructing Plaintiff's employment contract for getting extended beyond May 2008." Complaint, ¶ 176; "employment termination . . . ." Complaint, ¶ 178; and "mak[ing] trial not happen[] by significantly influencing this Courts' decision for getting the motion for summary judgment granted." Complaint, ¶ 180.[16] While one could reasonably argue that not being re-hired to one's teaching position may be an emotional experience, with some attendant emotional discomfort, the act of not re-hiring Amr without more, cannot be sufficient conduct upon which to found a claim of this type. Otherwise, any time someone was terminated from his or her employment, a claim would lie. That cannot be. This is also particularly true where Amr's prior attempts to seek reversal of this decision and damages in *Amr I* and *Amr II* have been denied. As a matter

---

[16] Amr also alleges that Plaintiff learned that "no relief had been requested for reinstating his terminated employment in the filed Second Amended Complaint against VSU. The District Court's order of cancelling the trial date of September 29, 2008 and continuing the case generally . . . ." Complaint, ¶ 179. These acts, benign as they are, were clearly performed by his own counsel and the district court. They are therefore not attributable to these Defendants.

of law, the acts Amr alleges do not rise to the level of conduct, which is outrageous or intolerable.

This claim must also be dismissed.

## CONCLUSION

WHEREFORE, the Defendants, the Attorney General of Virginia, Gregory C. Fleming, and Ronald N. Regnery, by counsel, respectfully request this Court to dismiss the Complaint.

> THE ATTORNEY GENERAL OF
> VIRGINIA
> RONALD N. REGNERY
> GREGORY C. FLEMING
>
>
> By: _____ /s/ _____
> George W. Chabalewski, SAAG
> Virginia Bar number 27040
> Office of the Attorney General
> 900 East Main Street
> Richmond, Virginia 23219
> Phone: 804-692-0598
> Fax: 804-786-0122
> gchabalewski@oag.state.va.us

KENNETH T. CUCCINELLI, II
Attorney General of Virginia

WESLEY G. RUSSELL, JR.
Deputy Attorney General

GEORGE W. CHABALEWSKI (VSB No. 27040)
CATHERINE CROOKS HILL (VSB No. 43505)
Senior Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, Virginia 23219
Phone: (804) 786-8199
Fax: (804) 371-2087
gchabalewski@oag.state.va.us
cchill@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2011, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a

notification of such filing to the following registered CM/ECF users:

Salame M. Amr
106 Cedar Creek Lane
Colonial Heights, Virginia 23834

By: _____/s/_____
George W. Chabalewski, SAAG
Virginia Bar number 27040
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone: 804-692-0598
Fax: 804-786-0122
gchabalewski@oag.state.va.us